IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PATRICK CALDWELL, FRAN CHARLSON, DOUGLAS EBERSOLE, and CARY QUEEN,

    Plaintiffs,

v.

FACET RETIREE MEDICAL PLAN and TIMOTHY RICHMOND AS PLAN ADMINISTRATOR OF THE FACET RETIREE MEDICAL PLAN,

    Defendants.

No. C 13-00385 WHA

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this ERISA benefits action inherited from a colleague, the parties have filed cross-motions for summary judgment on the administrative record. For the reasons stated below, the motions are **DENIED**.

## STATEMENT

**1. THE PLAN.**

The following facts are uncontested. Protein Designer Labs ("PDL") established a retiree medical benefits plan for select PDL executives in 2003. The Plan provided post-employment health benefits to retirees who were officers of PDL with at least ten years of service, eligible to participate in PDL's health plans as active employees, and elected to require under the terms of

whatever PDL retirement program applied at the time of their retirement. Plaintiffs Patrick Caldwell, Fran Charlson, Douglas Ebersole, and Cary Queen were executives at PDL who retired between December 31, 2003, and August 31, 2005, and elected to participate in the PDL plan (along with any applicable dependants).

PDL spun off part of itself into Facet Biotech Corporation ("Facet") on December 18, 2008. Facet assumed the PDL plan, amending and restating it as the Facet Retiree Health Care Plan ("the Plan"). On March 9, 2010, Abbott Laboratories, Inc. ("Abbott") acquired Facet and renamed the company Abbott Biotheraputics, which remained the sponsor of the plan. On January 1, 2013, Abbott spun off its pharmaceutical business into an independent company named AbbVie Inc. AbbVie assumed ownership of Abbott Biotherapeutics and renamed it AbbVie Biotherapeutics. AbbVie Biotherapeutics is the current Plan sponsor.

At its inception, the Plan required no contribution by its participants, including plaintiffs, to the premium that the Plan paid on behalf of the participant, and only required a 25-percent contribution to the premium paid on behalf of dependants.

Both sides identify the following three sections of the Plan as relevant to the instant dispute:

**Section II (Eligibility)**

**2.3 (Contribution Requirements)**: In the event that PDL requires contributions towards the cost of this Plan, coverage under this plan shall not take effect for persons for whom contributions are required, until such time as the contribution requirements are met. Contributions, if any, are described in Appendix A of this Plan.

**Section III (Benefits)**

**3.1 (Benefits Provided)**: A participant, who meets the eligibility requirements of Section 2 of this Plan, shall be eligible to participate in the PDL retiree Health Plan. The Benefits under this Plan shall be identical to those provided under the health plans available to the eligible active employees of PDL.

**Section VI (General Provisions)**

**6.10 (Amendment or Modification)**: The Plan may at any time and from time to time be amended or modified by written instrument duly adopted by PDL. Other provisions of this Plan notwithstanding, this Plan may be amended or modified only with regard to the eligibility requirements contained in Section II,

> paragraphs 2.1 through 2.8 of this Plan document . . . (Compl. ¶¶ 4–7, 10–13, 15, 17–18; Ans. ¶¶ 4–7, 10–11, 15, 17–18, 23; Dkt. No. 18; Hasselman Decl., Exhs. 13–14).

### 2. THE 2009 AMENDMENT.

The Compensation Committee of the Facet Board of Directors met on June 15, 2009, to discuss amending the Plan to shift responsibility for payment of the retiree medical premiums by the company to the participants. According to the presentation materials provided to the Compensation Committee, shifting the costs to the participants would save Facet $92,592 per year. In addition, the pre-meeting materials included a proposed revised Plan for adoption, including an edit to close the Plan to new participants. The revised Plan presented to the Committee, however, did not require participants to pay 100 percent of their premiums. Rather, the revised Plan established that participants would be responsible for paying 20 percent of their premiums for their coverage and 25 percent of the premiums for their dependants' coverage. Facet would cover the rest. This proposed revised Plan was contrasted with a PowerPoint slide that recommended requiring participants to bear 100 percent of all premium costs.

The minutes of the Compensation Committee's June 15 meeting appear to show that the Committee approved the revised Plan, "together with such changes thereto as any officer of the Company may deem necessary and appropriate and as any officer shall approve with such approval to be conclusively established by the execution of the Amended and Restated Plan." On August 31, 2009, Facet sent letters to each plaintiff that enclosed a copy of an "amended and restated copy" of the Plan. The amended Plan substituted "PDL" for "Facet" throughout the document and replaced "Appendix A" in Section 2.3 with "Appendix B." Appendix B, however, stated a different contribution requirement than the revised Plan presented to the Compensation Committee. The amended plan sent to plaintiffs provided that, effective January 1, 2010, retirees would be responsible for 100 percent of the premiums for their and their dependants' coverage:

> **Appendix B, Paragraph 5 (Monthly Contribution)**: Effective January 1, 2020, monthly premiums under the Plan will increase to an amount equal to the cost of premiums Facet Biotech pays to its health providers with respect to the benefits provide under the Plan to participants and their eligible dependants (i.e., similar to a COBRA rate structure).

3

After receiving the letters, plaintiffs contested the loss of their premium subsidies in communications with Facet (Compl. ¶¶ 18–19; Ans. ¶18–19; Torres Decl. ¶4, Exh. 2 at FBID 000045; Exh. 17 at FBID 000244–65, 000270–77, 000286–310; Exh. 18 at FBID 000163).

### 3.  ADMINISTRATIVE CLAIMS.

On October 27, 2010, plaintiffs filed their claim for benefits with the administrator of the Plan (Torres Decl., Exh. 3 at FBID 000319).  The claim was denied by Lois Laurie, Abbott's Divisional Vice-President of Benefits.  Plaintiffs appealed the denial on June 21, 2011, which was subsequently denied by defendant Timothy Richmond, who is the Plan administrator (Compl. ¶ 36; Ans. ¶ 36).  Plaintiffs claim that the Plan administrator was tainted by a conflict of interest.

Plaintiffs now move for a Rule 52 judgment on partial findings on plaintiffs' claim for benefits under ERISA Section 502(a)(1)(B), while defendants move for summary judgment under Rule 56.  Plaintiffs' Rule 52 motion is properly adjudicated as a motion for summary judgment on the administrative record.  *See Evans v. Bank of Am. Corp. Long Term Disability Plan*, No. 11-6271, 2012 U.S. Dist. LEXIS 154296, at *1 n.1 (N.D. Cal. Oct. 25, 2012) (Judge William Alsup), *citing Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929–30 (9th Cir. 2012).

 This order follows full briefing and oral argument.

**ANALYSIS**

Summary judgment is proper when the pleadings and the evidence in the record "show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(a).  A dispute is genuine only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and material only if the fact may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

4

**1. STANDARD OF REVIEW.**

Both sides agree that a threshold issue in this action is whether the 2009 amendment eliminating the subsidy on plaintiffs' medical premiums was validly adopted. Plaintiffs argue that evaluating whether the 2009 amendment was validly adopted is subject to *de novo* review because "the procedural validity of the [2009] amendment is a question of compliance with ERISA's requirements . . . not an interpretation of a plan document" (Br. at 10). Our court of appeals has stated that procedurally-defective amendments violate Section 402 of ERISA and are therefore not a part of the plan. Thus, a plan administrator's interpretation of a procedurally-defective amendment is not afforded deference because the amendment is not a valid part of the plan. *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 937–39 (9th Cir. 2003). Defendants argue that *Winterrowd* is inapplicable to this action because it addressed a direct challenge to a procedurally-defective amendment, whereas plaintiffs here assert a claim for benefits under ERISA, which is subject to a more onerous abuse of discretion standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Plaintiffs do not contest that the administrator's denial of benefits is evaluated under the *Firestone* abuse of discretion standard (Reply Br. at 2). In order to reach the merits of the denial, however, it must first be determined whether the amendment, which the administrator interpreted, was properly adopted. ERISA mandates that a plan may only be amended in conformity with the amendment procedures set forth in the master plan document. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 82 (1995). Moreover, an administrator is only granted discretion when authorized by a plan. *Firestone*, 489 U.S. at 112–13. Here, the Plan does not empower the administrator with discretion to determine whether an amendment is procedurally valid (Hasselman Decl., Exh. 14 at 7). While Section 4.4 of the Plan states that the "Plan Administrator shall have all powers necessary to administer this Plan . . ." including interpreting the Plan, it also states that the "Plan administrator shall have no power to add to, subtract from or modify any of the terms of the plan . . . or to waive or fail to apply any requirements of eligibility for a benefit under the plan." *Ibid*. As the Plan does not clearly give the administrator the discretion to determine whether an amendment is procedurally valid,

5

plaintiffs' procedurally-defective amendment claim is subject to *de novo* review. *Feibusch v. Integrated Device Technology, Inc. Employee Benefit Plan*, 463 F.3d 880, 883 (9th Cir. 2006). If and when defendants are able to prove that the 2009 amendment was validly adopted, then the administrator's denial of benefits will be evaluated under the *Firestone* abuse of discretion standard.

### 2. WAIVER.

Defendants alternatively argue that plaintiffs waived their procedurally-defective amendment argument because they did not present the argument in their administrative claims or in their complaint.

As to plaintiffs' administrative claims, our court of appeals has held that plaintiffs may introduce new theories in court that were not presented to the plan administrator. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 633 (9th Cir. 2008). Indeed, *Vaught* emphasized that issue exhaustion does not apply in ERISA cases because the statute contemplates "that a claimant's appeal will be heard by an impartial decisionmaker who may review new information in addition to information from the previous denial," and because the statute does not warn claimants that an issue exhaustion requirement will apply. *Id.* at 631-32. Accordingly, plaintiffs need not raise all possible arguments to the administrator in order to raise the argument in this Court. Similarly, defendants cannot rely on *Winters v. Costco Wholesale Corporation* because our court of appeals in *Winters* held that "[t]he *abuse of discretion standard* permits the district court to review only the evidence presented to the plan trustees." 49 F.3d 550, 553 (9th Cir. 1995) (emphasis added). Here, plaintiffs' claim is subject to *de novo* review. Defendants' reliance on other out-of-circuit authority is non-binding and unpersuasive.

Regarding plaintiffs' complaint, our court of appeals in *Vaught* ordered the district court to consider a theory that the plaintiff raised "for the first time" in the joint case management report. *Vaught*, 546 F.3d at 633. Thus, plaintiffs do not need to raise all arguments in support of their claim for benefits in their complaint. Likewise, plaintiffs' counsel states in her sworn declaration that she informed plaintiffs' counsel and Judge Maxine Chesney at the May 10 case management conference that plaintiffs intended to serve discovery on the issue whether the 2009

6

amendment was validly adopted (Hasselman Supp. Decl. ¶ 3). This is uncontested. Moreover, plaintiffs' complaint clearly states that plaintiffs never received "an executed copy of the Plan purporting to make the amendments required to put in place the changes in contribution requirements that Facet has applied to Plaintiffs" (Compl. ¶ 45). This section of the complaint includes the necessary factual allegations to support their procedurally-defective amendment theory underlying their claim for benefits. Therefore, defendants' waiver argument fails.

### 3. WHETHER THE AMENDMENT WAS PROCEDURALLY VALID.

Both sides present evidence on the issue of whether the 2009 amendment was procedurally valid. Plaintiffs point to the "red-line" proposed version of the Plan, presented to the Compensation Committee, which only raised plaintiffs' premium contributions to 20 percent (Hasselman Decl., Exh. 17). Indeed, defendants admit this document exists and that the Committee's final minutes indicated that the Committee adopted it (Opp. at 10; Torres Decl., Exh 4 at FBID 000554–78). Defendants, however, argue that a PowerPoint slide presented to the Compensation Committee supports the view that the Committee intended to approve a 100-percent contribution requirement (Torres Decl., Exh. 4 at FBID 000516). Moreover, both sides agree that the administrative record does not contain evidence to establish whether the Compensation Committee's had the authority to adopt the 2009 amendment (Opp. at 10; Reply Br. at 9). These substantive disagreements about the evidence in the administrative record demonstrate genuine disputes over material facts as to whether the 2009 amendment, which imposed a 100-percent contribution requirement, was validly adopted.

As both sides concede that the validity of the 2009 amendment is a threshold issue, this order does not need to address whether the Plan administrator abused his discretion in interpreting the 2009 amendment. Accordingly, the cross-motions for summary judgment are **DENIED**.

### 4. DISCOVERY.

In reviewing a denial of benefits *de novo*, the court is not limited to the record before the plan administrator. A court may allow evidence that was not before the administrator in circumstances where it is clearly established that additional evidence is necessary to conduct an

7

adequate review of the benefit decision. *Jebian v. Hewlett-Packard Co. Emple. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1110 (9th Cir. 2003). One such circumstance is "the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts . . . ." *Opeta v. Northwest Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007); see also *Anderson v. Sun Life Assur. Co. of Can.*, 2012 U.S. Dist. LEXIS 158689, at *20 (D. Ariz. Nov. 2, 2012) (Judge Cindy Jorgenson).

This order finds it necessary to open discovery and supplement the administrative record on all issues necessary to resolve the dispute, including all issues raised at oral argument today. For example, both sides should supplement the record to determine whether the Facet Compensation Committee was in fact delegated the authority to amend the Plan and, if so, whether the Committee properly amended the Plan.

**CONCLUSION**

For the reasons stated above, the cross-motions for summary judgment are **DENIED**.

**IT IS SO ORDERED.**

Dated: April 3, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8